UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY MICHAEL FLANAGAN, SR.,

                Plaintiff,

    -vs-                             **No. 1:13-CV-00499(MAT)**
                                        **DECISION AND ORDER**

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

**I. Introduction**

Represented by counsel, Timothy Michael Flanagan, Sr. ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's decision is affirmed.

**II. Procedural History**

The record reveals that on August 2, 2010, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning January 1, 2007, based on coronary artery disease, human immunodeficiency virus ("HIV") infection, gout, depression, and anxiety. After this application was denied,

plaintiff requested a hearing, which was held before administrative law judge William E. Straub ("the ALJ") on February 2, 2012. The ALJ issued an unfavorable decision on February 13, 2012. The Appeals Council denied review of that decision. This timely action followed.

**III. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**IV.   The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 1520. Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2010. T. 29. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, the amended alleged onset date. Id. At step two, the ALJ found that plaintiff had the following severe impairments: history of coronary artery disease, HIV infection, gout, depression, and anxiety. Id.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T. 30-31. The ALJ noted that he "particularly considered the claimant's HIV infection under Listing 14.08 *Human immunodeficiency virus (HIV) infection*," but found that, after reviewing the medical evidence, plaintiff did not meet this listing. The ALJ additionally found that the severity of plaintiff's mental impairments, considered singly and in combination, also did not meet a listing. In arriving at this conclusion, the ALJ considered plaintiff's reports of his own activities of daily living ("ADLs"), which plaintiff reported as taking care of family pets, driving, preparing meals, shopping, and managing money. T. 30 (referencing T. 160-77, 217-20).

The ALJ also considered the consulting psychiatric examination of Renee Baskin, Ph.D., completed on October 5, 2010. T. 217-20. At that exam, plaintiff reported difficulty sleeping due to anxiety, loss of appetite, and weight loss. T. 217-18. Plaintiff stated that he was able to perform daily activities, but due to his "physical and psychological problems," he had limitations. T. 219. Socialization revolved around his immediate family but "[o]ther than that, he [was] at home watching TV or listening to the radio." Id. Dr. Baskin concluded that the exam results were consistent with psychiatric problems that could interfere "to some degree" with plaintiff's ability to function daily. T. 220. According to Dr. Baskin, plaintiff had minimal to no limitations in following and understanding simple instructions, performing tasks independently, maintaining attention and concentration, and learning new tasks with supervision; and moderate limitations in maintaining a regular schedule, making appropriate job-related decisions, relating adequately with others, and appropriately dealing with stress. T. 219-20. Dr. Baskin diagnosed plaintiff, on Axis I, with depressive disorder, not otherwise specified ("NOS"), anxiety disorder, NOS, and pain disorder associated with general medical condition, and noted a guarded prognosis, citing plaintiff's "lack of involvement in any type of consistent supportive counseling for symptoms of depression and anxiety." T. 220.

At step four, the ALJ undertook a thorough review of the record evidence, including treatment records, consulting examinations, and plaintiff's own reports. The ALJ found that plaintiff's reports regarding his ADLs were "inconsistent with allegations of disabling symptoms and functional limitations," noting that plaintiff testified that he mowed the lawn with a push mower; walked along the Thruway to his mother's house in three to four block increments, with brief rest stops (although he separately reported that he had to take two to three hour breaks after walking this distance [T. 166]); and reported to Dr. Balderman that he had not consumed alcohol in years, but told Dr. Baskin that he drinks a six-pack of beer in a week and treatment notes continually refer to alcohol use. T. 36 (referencing T. 62-63).

The ALJ noted that in November 2009, plaintiff began treating at Erie County Medical Center ("ECMC"), primarily with Dr. Chi-Biu Hsiao, for an HIV infection. T. 264. Plaintiff reported fatigue and nausea, and stated that his anxiety prevented him from "doing roofing work like he used to do." Id. Plaintiff's physical exam was essentially normal, but surrogate marker[1] results showed an HIV-RNA

---

[1] "HIV RNA (viral load) and CD4 T lymphocyte (CD4) cell count are the two surrogate markers of antiretroviral treatment (ART) responses and HIV disease progression that have been used for decades to manage and monitor HIV infection." National Institutes of Health, *Guidelines for the Use of Antiretroviral Agents in HIV-1-Infected Adults and Adolescents*, available at https://aidsinfo.nih.gov/guidelines/html/1/adult-and-adolescent-a

count[2] of 46,952 and CD4 count[3] of 370. T. 264-65, 270. It was noted that plaintiff "decline[d] mental health provider help, but kn[ew] why he need[ed] [it]," and that he felt "guilty about it." T. 269. Treatment notes from that November exam through July 2010 reflect essentially normal physical examinations, with plaintiff's chief complaints revolving around fatigue and anxiety, but also including night sweats, stomach pain, foot pain, and diarrhea. T. 264-72.

As the ALJ pointed out, treatment notes from the time period February through August 2011, again from Dr. Hsiao, show that plaintiff's surrogate marker results improved dramatically with medication, as did his reports of symptoms. In November 2010, plaintiff's HIV-RNA count was less than 48 and his CD4 count was 476. T. 346. In July 2011, his HIV-RNA count was undetectable and his CD4 count was 550. T. 337. In October 2011, plaintiff's HIV-RNA count was 29 and his CD4 count was 882. T. 335-37. During this time period, plaintiff's physical examinations continued to be

---

rv-guidelines/458/plasma-hiv-1-rna--viral-load--and-cd4-count-monitoring.

[2] Viral load tests measure the amount of HIV in the blood. For most patients, the goal of HIV treatment is an HIV viral low that is "undetectable," meaning that the HIV RNA is below the detection limit of the test. High levels (from 30,000 [in women] to 60,000 [in men] and above) are linked to faster disease progression. See Univ. of Calif., San Francisco, *Understanding Laboratory Tests*, available at http://hivinsite.ucsf.edu/insite?page=pb-diag-02-00.

[3] Generally, a normal range for CD4 cells is between 600 and 1,500. Usually, when a person with low CD4 cells starts HIV medicines, the CD4 cell count increases as the HIV virus is controlled. See id.

6

essentially normal and his weight increased. T. 329, 337-38, 346. Additionally, as the ALJ noted, plaintiff's complaints of ankle swelling and skin lesions resolved over time. Id.

Dr. Hsiao completed a "medical statement regarding HIV and AIDS for Social Security disability claim" on February 14, 2011. T. 292-96. Dr. Hsiao reported that plaintiff had experienced repeated episodes of severe malaise, repeated episodes of severe pain, repeated episodes of severe night sweats, and "[o]ther repeated severe episodes caused by HIV-AIDs." Id. Dr. Hsiao also reported that plaintiff was moderately impaired in understanding, remembering, and carrying out simple instructions; moderately impaired in understanding and carrying out detailed instructions; markedly impaired in maintaining attention and concentration; markedly impaired in working with others, interacting with the general public, and accepting supervision; and extremely impaired in getting along with coworkers. T. 295. According to Dr. Hsiao, plaintiff was limited to standing 15 minutes at a time, sitting 30 minutes at a time, lifting 20 pounds occasionally, and lifting 10 pounds frequently. T. 294-95. The ALJ gave this assessment of plaintiff's limitations little weight, finding that it was not supported by other substantial record evidence, including the consulting psychiatric examination of Dr. Baskin. T. 36. Additionally, the ALJ noted that the physical limitations ascribed by Dr. Hsiao were "consistent with the performance of light work,"

although there was "no indication as to how [Dr. Hsiao] arrived at this conclusion." T. 36-37. The ALJ, in turn, gave significant weight to Dr. Baskin's opinion, finding that this assessment of plaintiff's mental limitations was consistent with treatment records from ECMC and Dr. Hsiao, and with the record as a whole. T. 37.

Dr. Samuel Balderman completed an internal medicine examination on October 5, 2010. T. 221-24. Plaintiff's physical examination was normal. T. 222-23. Dr. Balderman diagnosed plaintiff with status post myocardial infarction, questionable history of gout, history of alcohol abuses, and HIV positive status, and noted a stable prognosis. T. 223. Dr. Balderman opined that plaintiff had "mild physical limitations," without elucidating. Id. The ALJ gave "some" weight to this opinion, finding that although Dr. Balderman's assessment of mild physical limitations was consistent with treatment records, the ALJ "[gave] the claimant the benefit of every doubht, by providing that he is limited to performing light exertional work." T. 36.

Dr. Hillary Tzetzo completed a psychiatric review technique form on October 15, 2010. T. 225-38. Dr. Tzetzo assessed plaintiff as suffering from a medically determinable impairment that did not precisely satisfy the diagnostic criteria of an affective disorder or an anxiety-related disorder. T. 228, 230. Under the "B" criteria of the listings, Dr. Tzetzo found that plaintiff had no

restrictions of ADLs and no repeated episodes of deterioration, and mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. T. 235. Dr. Tzetzo found no evidence of the presence of "C" criteria, and ultimately found that plaintiff's mental impairments were non-severe. T. 236-37.

A physical residual functional capacity ("RFC") assessment was completed by single decision maker B. Jaffe on October 18, 2010. T. 239-44. That assessment found that plaintiff's mental impairments were not severe, and that plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; and push and/or pull to an unlimited extent. T. 240. The assessment also found no postural, manipulative, visual, communicative, or environmental limitations. T. 241-42. Regarding plaintiff's mental limitations, the ALJ gave "less weight" to this opinion, finding that the record supported a finding that plaintiff's mental impairments were severe. T. 37. Regarding plaintiff's physical limitations, the ALJ "place[d] some, but less weight," on the opinion, noting that "[w]hile these functional limitations are generally consistent with the evidence as well, [the ALJ] recognize[d] that they were rendered by a non-medical source, which warrants granting it less weight." T. 36.

Upon reviewing the evidence, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light

work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he was limited to work that required him to remember and implement simple instructions, with no more than occasional interaction with coworkers and the public. T. 31-37. After determining that plaintiff was unable to perform past relevant work as a roofer or construction laborer, at step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. T. 37-38. The ALJ applied the Medical-Vocational Guideline 202.21 ("the Grids") and SSR 96-9p in determining that plaintiff could perform this work.

## V. Discussion

### A.   Failure to Properly Weigh the Medical Opinions of Record

#### 1.   Application of the Treating Physician Rule

Plaintiff contends that the ALJ erred in not giving controlling weight to the functional assessment of plaintiff's treating physician, Dr. Hsiao. The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). The Court agrees with the ALJ, however, that Dr. Hsiao's assessment of plaintiff's mental limitations was not supported by substantial

record evidence. Dr. Hsiao's own treatment notes do not reflect the degree of limitation reported by the assessment. For instance, Dr. Hsiao opined that plaintiff's ability to get along with coworkers was "extremely impaired"; however, as the ALJ noted, although plaintiff reported social anxiety, there is no record evidence that he was unable to get along with others. Moreover, there are no psychiatric treatment notes in the record, and in fact, the record reveals that plaintiff refused psychiatric treatment. T. 269. Regarding plaintiff's physical limitations, Dr. Hsiao indicated that plaintiff was limited to standing 15 minutes at a time, sitting 30 minutes at a time, lifting 20 pounds occasionally, and lifting 10 pounds frequently. Dr. Hsiao's own treatment notes, however, do not support such restrictive sitting and standing capabilities: Dr. Hsiao's physical examinations of plaintiff yielded consistently normal results. T. 264-72, 329, 337-38, 346.

Plaintiff argues that the ALJ failed to consider the required factors in deciding to give less than controlling weight to Dr. Hsiao's opinion. See 20 C.F.R. § 404.1527(d)(2)-(d)(6) (the factors are: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention

of the Commissioner that tend to support or contradict the opinion). The ALJ need not explicitly discuss each of the factors, but he must apply "the substance of the treating physician rule." Halloran, 362 F.3d 28, 32 (2d Cir. 2004); see Atwater v. Astrue, 2013 WL 628072, *2 (2d Cir. 2013) ("[S]lavish recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear."). In this case, the ALJ fully reviewed the record evidence (including Dr. Hsiao's own treatment notes which did not substantially support the opinion) and evaluated Dr. Hsiao's opinion in light of its consistency with the rest of the record evidence. Moreover, Dr. Hsiao was not a specialist in psychiatry or psychology, and the ALJ's review of Dr. Hsiao's notes indicates that the ALJ was aware of the nature and extent of the treatment relationship, which stemmed from treatment for an HIV infection. It is thus clear from the ALJ's decision that he followed the substance of the treating physician rule, and his decision, which does not accord controlling weight to Dr. Hsiao's opinion, will not be disturbed.

    **2.    Weight Given to State Agency Reviewer's Opinion**

Plaintiff contends that the ALJ erred in giving any weight to the opinion of the state agency reviewer. As noted above, the ALJ stated that he gave "less weight" to the opinion as to mental limitations, and "some, but less weight" to the opinion as to physical limitations, merely noting that the assessment was

generally consistent with the record evidence. Although plaintiff correctly states that the opinion of a state agency reviewer who is not a medical professional is not entitled to any weight, plaintiff "has not demonstrated that he was prejudiced by the minimal weight afforded this opinion." Martin v. Astrue, 2012 WL 4107818, *16 (N.D.N.Y. Sept. 19, 2012); see Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 35 (2d Cir. 2013) (finding no reversible error where ALJ assigned "substantial weight" to state agency reviewer's opinion, where it was "supported by the remainder of the record"); Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (remand unnecessary where "application of the correct legal principles ... could lead only to the same conclusion").

### 3. Weight Given to Consulting Psychologist's Opinion

Plaintiff contends that the ALJ erred in giving significant weight to the opinion of consulting psychologist Dr. Baskin. However, "[c]onsultative opinions can be afforded even greater weight than treating-source opinions when there is good reason to reject treating source opinion, and substantial evidence supports them." Younes v. Colvin, 2015 WL 1524417, *5 (N.D.N.Y. Apr. 2, 2015) (citing SSR 96-6p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.")). The record evidence substantially supports Dr. Baskin's conclusions

regarding plaintiff's limitations. Therefore, the Court will not disturb the ALJ's decision.

### B. The ALJ's Duty to Re-Contact the Treating Physician

Plaintiff contends that the ALJ was required to re-contact Dr. Hsiao for additional information, arguing that because the ALJ stated that there was "no indication" of how Dr. Hsiao came to assess plaintiff's physical limitations (T. 37), the ALJ had an affirmative duty to "develop the record to clarify the basis of [the] opinion." Doc. 13-1 at 18. Although, in certain circumstances, an ALJ has an affirmative duty to develop the record where the basis of a treating physician's opinion cannot be discerned (see, e.g., Jackson v. Barnhart, 2008 WL 1848624, *8 (W.D.N.Y. Apr. 23, 2008)), such circumstances did not exist here. The record contains apparently complete treatment notes from Dr. Hsiao's own treatment of plaintiff, and, as discussed above, these treatment notes do not provide support for Dr. Hsiao's opinion, nor does other substantial evidence in the record. As the Second Circuit has explained, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir.1999) (internal quotation marks omitted).

**C.     Credibility**

Plaintiff contends that the ALJ erred in assessing his credibility.  In the context of his discussion of the record, the ALJ cited, among other sources, 20 C.F.R. § 416.929 and SSR 96-7p. The subsequent discussion, which incorporates a review of the testimony, indicates that the ALJ used the proper standard in assessing credibility, especially in light of the fact that the ALJ cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96–7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record."). The ALJ's conclusion that plaintiffs reports were not credible because they were inconsistent with substantial record evidence, and because plaintiffs' reports themselves were inconsistent with each other, was based on a proper application of the law and is supported by the record.

**VI.    Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 14) is granted, and plaintiff's

cross-motion (Doc. 13) is denied. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

    **SO ORDERED.**

                                        **S/Michael A. Telesca**

                                      HON. MICHAEL A. TELESCA
                                United States District Judge

Dated:    August 6, 2015
            Rochester, New York.